UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CECIL ANDREW HARTMAN | ) | |
| | ) | |
| v. | ) | 1:08-cv-13\1:04-cr-145 |
| | ) | *Judge Edgar* |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM**

Cecil Andrew Hartman ("Hartman") has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 55).[1] Hartman was charged in a four-count indictment with unlawful possession of firearms in violation of 18 U.S.C. § 922(g)(1) (Count One); manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count Two); possessing with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count Three); and possessing with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Four) (Criminal Court File No. 1).

The motion, together with the files and record in this case, "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts. The Court determines an evidentiary hearing is not necessary and for the following reasons will **DENY** Hartman's § 2255 motion (Criminal Court File No. 55).

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

1

**I.      28 U.S.C. § 2255 - Standard of Review**

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). Therefore, a motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

"It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair*, 157 F.3d at 430, (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). A defendant must show a "fundamental defect" in the proceedings which necessarily results in a complete miscarriage of justice or an egregious

error which violates due process in order to prevail under 28 U.S.C. § 2255. *See Fair*, 157 F.3d at 430; *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). In other words, "[o]n collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998), (quoting *Brecht v. Abrahamson*, 507 U.S. at 637). If the sentencing court lacked jurisdiction, however, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978).

To warrant relief for a nonconstitutional error, however, a movant must demonstrate that a fundamental defect in the proceedings resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure occurred during the criminal proceedings. *Reed v. Farley*, 512 U.S. at 354; *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, the Court finds they show conclusively that Hartman is not entitled to relief on the claims asserted. Accordingly, the Court will decide the matter without an evidentiary hearing and explain the reasons the asserted grounds for relief are without merit. *See United States*

*v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993).

**II.    Background**

Hartman filed a motion to suppress evidence seized during a search of his residence pursuant to a warrant, which the Court denied following an evidentiary hearing (Criminal Court File No. 21). Subsequent to the suppression hearing, Hartman filed a *pro se* motion to remove counsel from his case (Criminal Court File No. 22). A hearing was conducted and counsel's oral motion to withdraw was granted, and substitute counsel was appointed (Criminal Court File No. 24).

On May 24 and 25, 2005, Hartman proceeded to trial and was acquitted on Count One and convicted on Counts Two, Three, and Four (Criminal Court File No. 36). Hartman's post-trial motion for judgment of acquittal and motion for new trial were denied (Criminal Court File No. 42).

Hartman was subsequently sentenced to the custody of the United States Bureau of Prisons to be imprisoned for a term of 33 months. Hartman pursued a direct appeal and the Court of Appeals for the Sixth Circuit affirmed the district court's judgment. *See United States v. Hartman*, 213 Fed. Appx. 396 (6th Cir. 2007). The United States Supreme Court denied Hartman's petition for certiorari on June 11, 2007 (Criminal Court File No. 53).

According to the government's pleading, information on the Bureau of Prisons' website indicates that Hartman was released from federal custody on April 11, 2007, and returned to the State of Tennessee on a detainer for a parole violation on a prior murder conviction. Hartman filed this timely § 2255 motion on December 27, 2007 (Criminal Court File No. 55).

The following recitation of facts is taken from the court of appeal's opinion affirming Hartman's convictions:

> 1. ***The government's evidence***
> At the hearing held on Hartman's pretrial motion to suppress the evidence against

him, the government first called Detective Marty Dunn of the Hamilton County Sheriff's Office. Dunn testified that at approximately 10:30 a.m. on October 7, 2002, he received a call from Crime Stoppers notifying him that marijuana plants were growing at 5205 McDonald Road. Later that afternoon, Dunn and several other law enforcement officers drove out to the residence to investigate. From the road, Dunn observed a four-foot tall marijuana plant growing in plain view near an outbuilding (described as a chicken coop) on the property. The officers took several photographs of the plant. Dunn also noticed electrical cords running from the outbuilding to the house.

The officers proceeded to drive up to the house and knock on the door to see if anyone was there. As the officers were walking toward the house, they noticed on the ground the stem of a marijuana plant that still had a leaf attached. They photographed this plant as well. On the porch, Dunn observed a surveillance camera with a microphone that was attached to the house.

Dunn estimated that sometime after 5:00 p.m., he left the premises to drive downtown to apply for a search warrant. After a local magistrate judge issued the warrant at 7:10 p.m., Dunn drove back to the McDonald Road house where his fellow officers were waiting outside. Dunn knocked and announced his presence at the front door of the house at approximately 8:00 p.m. Receiving no response, he and the officers forced the front door open and entered.

The subsequent search of the house lasted approximately three to four hours and yielded a wealth of drugs and drug paraphernalia. Among the items that the officers seized were multiple clear bags containing marijuana, approximately three pounds of marijuana that had been laid out to dry, a small clear bag containing an off-white powdery substance, two containers holding clear plastic bags of cocaine hydrochloride, large amounts of green plant stems and marijuana seeds, a clear bag containing multiple unknown tablets unaccompanied by prescriptions, two marijuana plants located inside the residence and six marijuana plants located outside the residence, a large assortment of drug paraphernalia, three sets of digital scales, one triple-beam scale, numerous plastic bags, two mortar-and-pestle sets, several publications related to marijuana, four small surveillance cameras and an accompanying receiver, a frequency counter used to detect listening devices, four 12-gauge shotgun shells, and one pair of ear protectors for use during shooting. The officers also discovered, but were unable to remove at the time, several parts from a stolen car. Finally, the officers seized multiple items bearing Hartman's name. These included a prescription-drug bottle, mail addressed to Hartman, a Tennessee Department of Correction inmate ID card, a business card listing 5205 McDonald

Road as Hartman's address, store receipts a month or more old, bank checks, and deposit slips.

Two days later, on October 9, 2002, Dunn and several other law enforcement officers returned to the McDonald Road residence in a flatbed truck to seize and haul away the parts of the stolen car that their search had uncovered. The officers had rented the truck from a local wrecker service, and the government introduced at the suppression hearing a copy of the rental invoice. October 9, 2002, was the date printed on the invoice. At oral argument, Hartman's counsel conceded that he had no proof, nor had any reason to believe, that the invoice had been "doctored" in any way.

*2. Hartman's contrary evidence*

Hartman's witnesses recounted a different chain of events. Shirley Young, Hartman's neighbor, testified that sometime between 1:00 and 1:30 p.m. on October 7, 2002, she saw a Jeep Cherokee speed past her house. She yelled at the driver and told him to slow down. The driver stopped, backed up to speak with her, showed her his police badge, and told her that he was going to get a search warrant. This much was consistent with the testimony of Detective Dunn, who recalled having had a brief conversation with Young on October 7.

According to Young, a flatbed truck also arrived at Hartman's house at approximately 3:00 p.m. that same day. Young then called Hartman's mother, Veta Watkins, and informed her that the police were at her son's home. At approximately 4:30 p.m., while Young was again on the phone, she saw the flatbed truck coming down the driveway from Hartman's house with "a bunch of junk" on it. She further testified that by 6:30 p.m., all of the police officers had left the area.

Later that night, at approximately 7:00 p.m., Young and Watkins claim that they walked up to Hartman's house where they saw that the door had been forced open. Young testified that the house had been ransacked. She stated that she was inside for about 30 or 40 minutes before returning home. She did not see anyone return to Hartman's home or the surrounding area that evening.

Watkins also testified on her son's behalf. She said that when she entered the house with Young on October 7, she observed numerous papers on the pool table including a list of everything that had been taken from the residence. But she also recalled that attached to this inventory was a copy of a search warrant.

*United States v. Hartman,* 213 Fed. Appx. 396, 397-399,(6th Cir. Jan. 9, 2007), *available at* 2007 WL 64230.

**III. Analysis**

   *A.   Execution of Sentence*

Hartman claims he was "[f]orced to do [his] sentence in a piecemeal fashion." (Criminal Court File No. 55). According to Hartman, he did not receive proper credit for twenty months during which he was detained prior to being indicted, which allegedly has impacted the execution of his state sentence following violation of his parole (Criminal Court File No. 55).

The appropriate avenue for challenging the execution or manner in which a sentence is served is by filing a habeas petition pursuant to 28 U.S.C. § 2241. *See Terrell v. United States*, 564 F.3d 442, 447 (6th Cir. 2009) ("[C]laims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241."); *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991) (district court lacked jurisdiction to hear a challenge about the execution of the sentence under 28 U.S.C. § 2255).

Accordingly, because Hartman challenges the execution of his sentence, relief is **DENIED** as the Court lacks subject matter jurisdiction under 28 U.S.C. § 2255 to adjudicate this claim.

   *B.   Speedy Trial*

Hartman complains that he was in the county jail for 28 months before he could get a trial. According to Hartman "federal conspired with county/state to deny me a speedy trial. The federal came in after 18 months and three trial dates and still sealed the indictment for two months. This messed up my parole violation and time amounts done because of this. The federal knew of the case from the day I was arrested on March 14, [20]03." (Criminal Court File No. 55).

"The Sixth Amendment to the United States Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.' U.S. Const. amend. VI."

*United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001). In addition, the Speedy Trial Act, codified at 18 U.S.C. § 3161 et. seq., provides that a federal criminal defendant's trial must commence within seventy days of the filing date of the information or indictment, or of the defendant's initial appearance, whichever comes later. 18 U.S.C. § 3161(c).

Motions filed under 28 U.S.C. § 2255, however, are not substitutes for appeals. *See Reed v. Farley*, 512 U.S. 339, 354 (1994). An issue may not be raised for the first time on collateral review without showing cause for the procedural default and actual prejudice as a result of the error. *United States v. Frady*, 456 U.S. 152, 167-68 (1982)*; United States v. Watroba*, 56 F.3d 28, 29 (6th Cir.), *cert. denied*, 516 U.S. 904 (1995). Because Hartman failed to raise his speedy trial claim at the district court level or on direct appeal, his claim is procedurally defaulted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Therefore, unless Hartman can show both cause, excusing his double procedural default, i.e., failing to raise the speedy trial issue during his criminal proceedings and on direct appeal, and actual prejudice resulting from the alleged violation of his right to a speedy trial exists to excuse his failure to raise the issue during criminal proceedings and on direct appeal, or that a constitutional error "has probably resulted in the conviction of one who is actually innocent[,]" he is barred from raising the claim here. *Id.*; *Frady*, 456 U.S. at 168.

To show cause, Hartman must point to "some objective factor external to the defense" that prohibited him from raising his claim on direct appeal. *See Murray v. Carrier* 477 U.S. 478, 488 (1986). To show prejudice, he must demonstrate an error that worked to his actual and substantial disadvantage. *See Frady*, 456 U.S. at 170. To show actual innocence he must show that he is factually innocence, mere legal insufficiency of the evidence is not enough. *Bousley*, 523 U.S. at

8

623. Hartman does not allege, much less demonstrate, cause and prejudice or actual innocence to excuse his procedural default.

Hartman has alleged no cause for his failure to raise his speedy trial claim during his criminal proceedings or on direct appeal. He makes no argument regarding any prejudice he suffered, much less point to "some objective factor external to the defense" that prohibited him from raising this claim, nor does he claim to be actually innocent. Instead, Hartman merely raises the speedy trial violation for the first time in this § 2255 motion. Accordingly, the speedy trial claim is **DENIED**, as Hartman is procedurally barred from first raising this claim in this collateral proceeding.

    *C.*    *Brady Claim*

Hartman contends that "paperwork was withheld in discovery that would have aided my cases." (Criminal Court File No. 55). Hartman explains:

> The file on the rollback materials removed from 5205 McDonald Rd. The wrecker service bill. The files on the witnesses at trial was not in discovery. The county had a inventigation [sic] file on the items removed by them. The time frame of this truck is very important to time frame of the search of 5205 McDonald Rd.

(Criminal Court File No. 55).

Once again Hartman has procedurally defaulted a claim. As previously stated, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice . . . or that he is actually innocent." *Bousley v. United States*, 523 U.S. at 623 (internal punctuation and citations omitted). Hartman offers no explanation for his default. Specifically, he alleges no cause and prejudice or actual innocence, i.e., "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (internal punctuation and citations omitted).

Accordingly, because Hartman offers no excuse for his failure to raise the *Brady* issue at an

9

earlier time, this claim is procedurally barred from review and relief will be **DENIED**.

   *D.*  *Ineffective Assistance of Counsel*

  Hartman also raises two alleged instances of ineffective assistance of counsel. Specifically, he claims his first counsel rendered ineffective assistance during the suppression hearing because he failed to investigate the Cain Wrecker Service bill; prepare for the hearing as he had not been at work; talk with Hartman prior to the hearing; and retrieve the file from his state attorney. Hartman claims trial counsel was ineffective because, due to being overworked, he was prevented from preparing for trial and objecting to the introduction of his parole card during the jury trial. After discussing the applicable law, the Court will analyze each alleged instance of ineffective assistance of counsel.

    1.  **Applicable Law**

  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88; *McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996); *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992). *See also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987).

  In order to demonstrate deficient performance, it must be shown that counsel's representation fell "below an objective standard of reasonableness" in light of the "prevailing professional norms."

*Strickland*, 466 U.S. at 686-88. In *Bobby v. Van Hook*, the Supreme Court reiterated that an objective standard of reasonableness is a general standard:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Restatements of professional standards, we have recognized, can be useful as "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place.

*Bobby v. Van Hook*, ___ U.S. ___, 130 S.Ct.13, 16 (2009) (quoting *Stickland v. Washington*, 466 U.S. at 688-89) (citations omitted).

To establish the prejudice prong, a petitioner must show that absent his attorney's errors, the result of his trial would have been different. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996) (Internal punctuation and citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment. *West v. Seabold*, 73 F.3d at 84.

The Supreme Court has reiterated the standard of prejudice in *Wiggins v. Smith*, 539 U.S. 510 (2003):

> [T]o establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id*. at 534 (quoting *Strickland v. Washington*, 466 U.S. at 694).

11

When applying these standards, the Court is cognizant of the fact that there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 687; *United States v. Cronic*, 466 U.S. 648, 658, (1984), *cert. denied*, 523 U.S. 1088 (1998); *McQueen* [*v. Scroggy*], 99 F.3d [1302,] 1310-11 [6th Cir. 1996]). A reviewing court cannot indulge in hindsight but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 690; *McQueen*, 99 F.3d at 1311. Trial counsel's tactical decisions are particularly difficult to attack. *McQueen*, 99 F.3d at 1311; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828. "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690). A court must make an independent judicial evaluation of counsel's performance and determine whether counsel acted reasonably under all the circumstances. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

### 2. Suppression Hearing

Hartman alleges counsel failed to conduct an adequate investigation in preparation for the suppression hearing. Specifically, Hartman claims counsel did not investigate the Cain Wrecker

Service bill or the time they removed the items from his property, obtain the file from his state attorney, or consult with him prior to the hearing.

A review of the transcript of the suppression hearing reflects that counsel presented Hartman's argument that the search occurred prior to the issuance of the search warrant by presenting witnesses that testified about their observations and contact with law enforcement on the date the search was conducted, in an effort to contradict the state's evidence. In addition, counsel cross-examined the government's witnesses regarding the time of the issuance of the search warrant, the time of the search, and the date items were removed from the residence.

Although Hartman's position was that the evidence was removed on the afternoon of October 7, 2002, prior to the issuance of the search warrant, which the record reflects was signed and executed by law enforcement at 8:00 p.m. on October 7, 2002, the bill from Cain's Wrecker Service reflected they removed the stolen vehicle parts from Hartman's residence on October 9, 2002 (Criminal Court File No. 27, pp. 75-96). The evidence of the warrant and Cain's Wrecker bill contradicted Hartman's argument at the suppression hearing. Nevertheless, even assuming counsel did not conduct an adequate investigation prior to the suppression hearing, there is no evidence that Hartman was prejudiced as he has not demonstrated a reasonable probability that but for counsel's alleged failure to investigate, the outcome of the proceeding would have been different.

Furthermore, assuming counsel failed to obtain the file from his state attorney and failed to meet with him prior to the suppression hearing, and assuming these actions amount to deficient performance on counsel's part, Hartman has failed to allege or demonstrate he suffered any prejudice as a result of these alleged shortcomings. Accordingly, Hartman's claim that counsel was ineffective at the suppression hearing is rejected and relief will be **DENIED**.

### 3. Jury Trial

Hartman claims trial counsel was unable to prepare for trial because he was overloaded with other cases. Hartman also argues counsel was ineffective when he failed to object to the introduction of Hartman's Parole Card during trial.

To the extent Hartman is attempting to raise two separate instances of ineffective assistance against his trial attorney, he has failed to do so. Contrary to the express directions of Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, Hartman's claim that counsel was unprepared for trial does not "state the facts supporting [this] ground" of ineffective assistance of counsel. Hartman does not provide any factual support for this assertion, thus the Court is unable to determine what specifically Hartman claims counsel should have done to prepare that he failed to do. Consequently, Hartman has failed to set forth a legally sufficient claim for relief because he has omitted the factual support for this claim. This claim does not contain sufficient facts to constitute a viable claim for relief in this federal post-conviction proceeding.

Accordingly, Hartman's claim of ineffective assistance of counsel for failure to prepare for trial, which is facially insufficient to state a claim for relief, will be summarily **DENIED** for failure to comply with Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. *See Sloan v. United States*, 2006 WL 686875 (E.D. Tenn. March 16, 2006); *United States v. Vega*, 2006 WL 1699530 (W.D. Tenn. June 15, 2006); and *United States v. Butt*, 731 F.2d 75, 77 (1st Cir. 1984).

As to Hartman's claim that trial counsel was ineffective for failing to object to Officer Dunn's testimony regarding Hartman's parole card which was found at the residence of the search,

he has failed to demonstrate that counsel was ineffective in this instance. As the government correctly points out, if counsel had objected, the objection would have been overruled. The defense presented in the trial was that the location of the search was not Hartman's residence or at least that the government was unable to fulfill its burden of proving actual constructive possession of the residence (Criminal Court File No. 45, p. 95-100). When the prosecution requested to present Hartman's parole officer to testify that Hartman previously confirmed the location of the search was his residence, trial counsel vigorously objected but was overruled. Although the officer was not identified as Hartman's parole officer, the Court noted that any prejudice that would have resulted from allowing the parole office to identify himself during trial would not be great since the jury already knew Hartman had a record and was in the state prison system (Criminal Court File No. 45, pp. 100-111). Likewise, because the jury knew Hartman had a criminal record, the admission of his parole card did not cause him to suffer any prejudice. Consequently, Hartman has not demonstrated trial counsel rendered ineffective assistance.

Accordingly, because counsel was not deficient for failing to make a meritless objection and Hartman did not suffer any prejudice as a result of the omission, relief on Hartman's claim that counsel was ineffective is not warranted; this claim will be **DENIED**.

E. *Credibility of Law Enforcement Witnesses*

In Hartman's fifth claim, he contends two of the officers committed perjury. Specifically, Hartman claims Detective Dunn "changed his story two times and lied about not knowing anything about 5205 S. McDonald Rd. till Oct.7, 02. The HCSD had been doing a investigation on 5205 McDonald Rd. from Aug. 21, 02 til Oct. 7, 02. Manta lied about not searching before the warrant was serviced." (Criminal Court File No. 55, p. 14).

15

Hartman moved to suppress the evidence seized as the result of the search of his residence. Hartman attacked Detective Dunn's credibility and presented testimony contradicting the officers' testimony. Nevertheless, during the suppression hearing the Court specifically found "the testimony of Detective Dunn is credible. The testimony of Young and Watkins is not credible and is inconsistent with key proof[.]" (Criminal Court File No. 21).

During trial, defense counsel throughly cross-examined both law enforcement witnesses, i.e., Detective Dunn and Officer Manta, bringing out evidence of inconsistencies but the jury found their testimony was materially credible, and the court of appeals affirmed. The record, however, does not reflect that Hartman raised a claim of perjury on direct appeal. In addition, the only evidence of perjury presented by Hartman is the evidence that was presented and considered by the Court and/or jury during Hartman's criminal proceeding. Indeed, the evidence Hartman claims is perjury consists of inconsistencies in testimony from witnesses which the Court and jurors heard and whose credibility the Court and jurors had the opportunity to weigh. Hartman has presented no newly discovered evidence or any cause for his failure to raise this perjury claim on direct appeal. In addition, "[a] section 2255 motion is not a vehicle for rearguing the credibility of witnesses." *Conteh v. United States*, 226 F.Supp.2d 514, 519 (S.D.N.Y. Oct. 7, 2002).

As previously explained, a § 2255 motion may not be used to raise new claims that could have been raised on appeal but were not, absent a showing of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. at 622. Hartman has procedurally defaulted his perjury claim as he did not raise it on direct appeal and he has made no effort to show cause for his failure to raise these allegations on direct appeal and resulting prejudice or meet his heavy burden of demonstrating a fundamental defect in the proceedings resulted in a miscarriage of justice. As

previously stated, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice . . . or that he is actually innocent." *Bousley v. United States*, 523 U.S. at 623 (internal punctuation and citations omitted). Hartman offers no explanation for his default. Specifically, he alleges no cause or prejudice and he does not contend he is actually innocent. *Id.*

Accordingly, because Hartman offers no excuse for his failure to raise the perjury issue at a earlier time, he is barred from bringing this claim as an independent allegation of a violation of his rights as this claim is procedurally barred from review and will be **DENIED**.

### F. *Failure to Grant Extension for Suppression Hearing*

Finally, Hartman claims the Court failed to grant counsel more time in which to prepare for the suppression hearing. Hartman contends counsel had been out of the county on personal business and had not prepared for the hearing. Hartman claims the Court refused to extend the motion hearing because of the Court's schedule.

Hartman did not raise this claim on appeal and the Court has already explained the cause and prejudice, and miscarriage of justice hurdle Hartman must overcome in order to have claims not raised on direct appeal adjudicated on the merits. Hartman has not made such a showing. Therefore, he has committed a procedural default for which he offers to cause and prejudice or miscarriage of justice to permit this Court to reach the merits of this claim. Accordingly, Hartman's claim challenging the Court's denial of the motion to continue the suppression hearing will be **DENIED**.

**IV.     Conclusion**

Hartman has failed to present any facts which establish his sentence is subject to collateral attack under 28 U.S.C. § 2255. Hartman is not entitled to any relief under § 2255 and a judgment will enter **DENYING** his motion.

E N T E R this the 19th day of April, 2011.

                                      */s/ R. Allan Edgar*
                                   R. ALLAN EDGAR
                          UNITED STATES DISTRICT JUDGE